CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 20 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERESA W., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:17-CV-430 |
| | ) |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) By: Michael F. Urbanski |
| Acting Commissioner of Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 20, 2019, recommending that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Teresa L. ("Teresa") has filed objections to the report and this matter is now ripe for the court's consideration.

As discussed more fully below, the court finds that the ALJ did not properly consider the opinion of Teresa's treating physician. In turn, the basis for finding that she could return to her past relevant work is not based on substantial evidence. Thus, remand for further review is warranted. The court will **SUSTAIN** Teresa's objection, **REJECT** the magistrate judge's recommendation, and **REMAND** this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014

2

WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*."). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and

3

> runs contrary to the purposes of the Magistrates Act." Howard
> [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th
> Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

4

## III. Plaintiff's Objections[1]

On summary judgment, Teresa argued that the ALJ opinion was not supported by substantial evidence. In particular, she asserted that the ALJ failed to properly evaluate the opinions of her treating sources and failed to properly evaluate her past relevant work as it was actually performed. In her objections to the report and recommendation, Teresa argues that the magistrate judge erred when he found that substantial evidence supported the ALJ's decision to give less than controlling weight to the opinion of Teresa's treating physician and also when he found that the ALJ properly determined that she could return to her past relevant work as a credit manager.

### A. Opinions of Treating Physicians

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 Fed. Appx. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018)). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations and internal

---

[1] Detailed facts about Teresa's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 19) and in the administrative transcript (ECF No. 8) and will not be repeated here.

5

quotations omitted).[2] If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ must consider a non-exclusive list of factors to determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source. Testamark, 736 Fed. Appx. at 398.

While Teresa makes a general objection that the ALJ did not properly credit the testimony of her treating physicians, her only specific objection is that the ALJ did not say what weight, if any, she gave to the June 2015 opinion of Clifford Nottingham, M.D. A brief description of Dr. Nottingham's records regarding Teresa's treatment are set out here to provide context for Teresa's argument.

Teresa saw Dr. Nottingham in April 2012, complaining of back pain after a fall the month before and reporting that her chronic back pain had become much worse. Her exam was essentially normal except for diffuse tenderness to palpation over her low and mid spine. She could ambulate independently and had no weakness in her lower extremities. R. 394. Imaging showed moderate degenerative disc changes at C5-C6 with vertebral body fusion at C6-C7. She had a rather pronounced narrowing of the L4-L5 intervertebral disc space with mild narrowing of the L5-S1 disc space. R. 526-527. In July 2012 a myelogram showed multilevel degenerative changes with mild to moderate neuroforaminal stenosis on the right at L4-L5 and L5-S1. R. 354.

---

[2] The Social Security Administration has amended the treating source rule effective March 27, 2017, for cases filed after that date. Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because this case was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

6

Teresa saw Dr. Nottingham again in December 2012. She reported muscle pain and pain in her joints and back. R. 426. She had multiple areas of joint stiffness and soft tissue tenderness. R. 429. She was using a TENS unit for chronic spine pain which she said was working well. She also had ongoing symptoms at multiple sites, presumably from fibromyalgia. R. 426. On December 11, 2012 Dr. Nottingham noted that Teresa's back pain was being managed by Dr. Shaffrey with conservative measures using pain management and injections. He also noted that Teresa had been out of work since December 4, 2012 and would not return until December 24, 2012. R. 434, 437. On December 21, 2012 Teresa reported a positive response to an injection she had received from a pain specialist. R. 440. Dr. Nottingham wrote another note indicating that she should not return to work until she saw the pain specialist in January. R. 443.

In January 2013 Teresa told Dr. Nottingham that ongoing back pain as well as pain in multiple muscular locations caused her to be unable to sit for very long, nor to stand or do any other activities for a prolonged period. She was in no acute distress but had multiple areas of tenderness over the soft tissue of her neck, paraspinous region, and low back. She had discomfort with any range of motion in her low back and ambulated somewhat slowly because of pain. Dr. Nottingham recommended gentle but consistent walking for exercise. R. 445. Dr. Nottingham continued to write notes commenting that Teresa was chronically disabled because of her pain and should remain off work. R. 448, 451, 453, 463. He encouraged her to walk on level ground. R. 451.

Dr. Nottingham completed a work-related questionnaire on May 9, 2013 on which he checked boxes indicating that Teresa's pain was incapacitating; sitting increased or aggravated

7

her pain to the extent that medication was necessary; medication caused her effectiveness in the workplace to be severely limited and caused her to be unable to function at a productive level; her pain was constant; and she was liable to be absent from work more than three times a month because of her impairment. R. 495.

On May 13, 2014 Teresa reported to Dr. Nottingham that doctors at the University of Virginia hospital did not believe she was a candidate for surgery and she had tried all the pain management modalities. She was using her chronic preventative medication as well as breakthrough pain medication but had not been exercising and had been unable to lose weight. He noted that Teresa's back symptoms were chronic and likely combined both spinal disease, fibromyalgia, and some degree of underlying depression. R. 497.

In November 2014 Teresa told Dr. Nottingham that she was in pain virtually all the time and sometimes took two Oxycodone tablets instead of one. She took her other medications as scheduled. Her back pain had flared up in recent days and she had occasional low-grade but chronic paresthesia in her right leg. She had muscular tension posteriorly in the paraspinous musculature at the cervical area and lumbar region. She had discomfort moving her neck and lower back. He opined that her multiple chronic issues, including long-term back discomfort and fibromyalgia, were not likely to improve.

On December 30, 2014 Dr. Nottingham wrote a letter stating that he had been treating Teresa for more than ten years and that she had experienced continuous back pain since 2012 and had been compliant with therapy. A previous lumbar MRI showed evidence of intervertebral disc degeneration, annular bulging, and central disc extrusion with compression of the thecal sac, but she had not experienced weakness despite the findings. She experienced

8

chronic pain in her back and lower extremities and could not be in one position for more than thirty minutes at a time. He believed that her pain coupled with her medications made her unable to find a comfortable position that would allow her to carry on her normal work activity and also affected her ability to concentrate on work duties. He did not believe she could perform the duties of her regular occupation. R. 519.

On June 11, 2015, Dr. Nottingham completed a Medical Assessment of Ability To Do Work-Related Activities (Physical).[3] He found that Teresa could carry five pounds occasionally and two pounds frequently because she had pain in her arms and neck when lifting. He said she could walk for two hours in an eight-hour workday and could walk without interruption for thirty minutes. She could sit for a total of four hours and without interruption for thirty minutes. She could never climb, stoop, balance, or crawl and could occasionally kneel or crouch. Her ability to reach, handle, feel, push, and pull were limited by pain and the degenerative changes in her spine. Handling and feeling were limited by paresthesia of her right upper extremity. She should avoid working around heights, moving machinery, temperature extremes, and vibration because of the degenerative changes in her spine and her medication use. R. 521-522.

Teresa saw Dr. Nottingham again in February 2016 and reported diffuse body aches that were particularly bad through the neck, upper spine, hips, and lower extremities. She was taking Morphine and Oxycodone as directed, along with her other medications. She was alert and in no acute distress. Her neck was supple and she had some tenderness in the soft tissue

---

[3] Dr. Nottingham also provided an assessment of Teresa's mental abilities to do work-related activities, but Teresa did not dispute that assessment either in her summary judgment motion or in these objections and it is not addressed here.

9

of her neck posteriorly and laterally and in the shoulder compartments bilaterally. R. 751. In June 2016 an X-ray of Teresa's spine showed endplate osteophyte formation in the mid to lower thoracic spine and slightly narrowed intervertebral disc height at T7-T8. R. 799.

In the ALJ's decision, she gave little weight to Dr. Nottingham's July 2013 opinion that Teresa is in constant pain that renders her unable to function in a work setting and that she would be absent several times per month, because he did not cite specific evidence or specify the extent of the functional limitations that would prevent her from working. The ALJ also commented that the opinion was inconsistent with the weight of the evidence, both in the record and presented at the hearing. R. 27, 495.

The ALJ also gave little weight to Dr. Nottingham's December 2014 opinion that Teresa needed to change positions frequently and that her pain made it difficult to concentrate at work. The ALJ found the opinion inconsistent with Dr. Nottingham's observation that Teresa had no ongoing weakness. The ALJ further noted that Dr. Nottingham did not address Teresa's exact functional limitations. R. 27, 519.

With regard to Dr. Nottingham's June 2015 opinion, in which he did address Teresa's functional limitations, the ALJ found that some of the physical limitations, such as the environmental and standing limitations, were consistent with the record, given Teresa's evidence of pain. However, the ALJ found that the extreme lifting limitations and postural limitations were not wholly supported because Dr. Nottingham's notes did not reflect testing to support greater limitations that those included in the residual functional capacity. Significantly, the ALJ did not make a finding with regard to Dr. Nottingham's opinion that

Teresa could not sit for more than four hours in a day or for more than half an hour at a time. R. 27, 521-522.

The magistrate judge found that the ALJ properly considered the relevant factors and the record in determining the weight to give Dr. Nottingham's opinions. He noted that the ALJ explained how each opinion was inconsistent with the record and with Teresa's actual capabilities. The magistrate judge also found that while the ALJ did not accord a specific weight to the June 2015 opinion, her explanation provides a sufficient basis on which to review the decision to not accord it controlling weight. ECF No. 19 at 11. The magistrate judge then compared the ALJ's assessment with the factors to be considered as set forth in 20 C.F.R. § 404.1527(c). The magistrate judge concluded that substantial evidence supported the ALJ's determination.

Teresa objects to this conclusion and argues that the ALJ did not properly evaluate Dr. Nottingham's June 2015 opinion because she did not state how much weight she assigned it. She argues that the court cannot properly determine whether the record is supported by substantial evidence without knowing how much weight the ALJ gave the opinion.

The court will assume that the ALJ accorded the opinion some weight, because the ALJ did find that some of the physical limitations assessed by Dr. Nottingham were consistent with the record, given Teresa's evidence of pain. However, the ALJ discounted the extreme lifting limitations and postural limitations because Dr. Nottingham's notes did not reflect testing to support the limitations. Thus, to the extent the ALJ discussed Dr. Nottingham's assessment, she did articulate reasons for giving the opinion less than controlling weight. But,

11

as pointed out above, the ALJ made no mention of Dr. Nottingham's finding that Plaintiff can sit for no more than four hours a day or for more than thirty minutes at a time.

The ALJ did cite to evidence in the record that Teresa's neurosurgery treatment providers[4] had commented that Teresa should not work in a job that required sitting for extended periods of time, but she discounted the comment, saying it was based on the claimant's reports of pain and it was limited in time until her spine could be evaluated further. R. 27, 335. However, the record shows that the neurosurgery providers' recommendation was based not only on Teresa's report of pain, but also on imaging done in 2012 showing multilevel degenerative changes worse at L4-5 and L5-S1. In addition, the right L5-S1 facet joint was hypertrophic and there was disc height loss, osteophytes, and facet hypertrophy at L4-5. R. 335. Also, additional imaging done in 2013 showed essentially no changes. Teresa continued to have lumbar spondylosis, most advanced at L4-L5 where there was moderate disc degeneration, mild lateral right stenosis, and mild to moderate foraminal stenosis at L4-L5 and L5-S1 on the right. R. 361. Thus, objective evidence in the record supports the neurosurgery team's assessments that Teresa cannot sit for long periods of time, and Dr. Nottingham's finding that she can sit no longer than four out of eight hours is consistent with that assessment.

---

[4] A physician assistant, Gavin Maccleery, wrote the note regarding Teresa's ability to sit. Although at the time Teresa filed her application, a physician assistant was not considered a treating source, Mr. Maccleery worked under the direction of Mark Shaffrey, M.D. The magistrate judge accepted that the two worked together as Teresa's neurosurgery source and neither party objected. ECF No. 19 at 13, n. 7. Effective March 27, 2017, physician assistants are recognized as treating sources for cases filed after that date. See 82 Fed. Reg. 5845 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1502 and 416.902).

Also, the ALJ limited the weight she gave the neurosurgery source's comment in part based on her observation that Teresa was able to sit for the duration of the hearing. R. 27. But authority is clear that "[w]hile a claimant's demeanor at a hearing can be considered by the ALJ in evaluating credibility and subjective complaints of pain, it is inappropriate for the ALJ to judge a claimant by reference to some "sit and squirm" index." Wander v. Schweiker, 523 F.Supp. 1086, 1094 (D. Md. 1981) (internal citations omitted). The ALJ did not rely solely on her observation of Teresa to give less weight to the opinions of her treating providers, but to the extent she did, the determination is not based on substantial evidence.

Finally, in another part of the opinion, the ALJ cites Teresa's "capabilities" to discount Dr. Nottingham's findings with regard to her ability to work. R. 27. A careful review of the record shows that the capabilities described by the ALJ were that Teresa could get on and off the exam table and had a normal gait and stance. R. 26. None of those activities indicates that Teresa can sit for more than four hours per day, or for more than one-half hour at a time, as Dr. Nottingham found.

The court has reviewed the record de novo. Bearing in mind that the ALJ is required to give controlling weight to opinions from a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record, the court finds that the ALJ did not properly assess Dr. Nottingham's 2015 finding with regard to Teresa's ability to sit. Not only did the ALJ not mention the finding, she failed to note that another treating source had made a similar recommendation and that the record contains objective evidence to support the conclusions of both. In addition, the inconsistencies she

13

cited to reduce reliance on Dr. Nottingham's conclusion do not address Teresa's ability to sit. Accordingly, the court sustains Teresa's objection that the magistrate judge erred in finding that the ALJ properly considered Dr. Nottingham's June 2015 opinion.

## B. Return to Past Relevant Work

The ALJ found that Teresa had the residual functional capacity (RFC) to do sedentary work, which requires lifting and carrying no more than ten pounds occasionally and five pounds frequently, standing and walking no more than two hours in an eight-hour workday, sitting for no more than six hours in an eight-hour workday, and additional postural and environmental limitations. R. 25. She then concluded that Teresa could perform her past relevant work as a credit manager which did not require performance of work-related duties beyond her RFC. R. 28. In support of this conclusion, the ALJ cited the testimony of the vocational expert, who testified that a hypothetical person of Teresa's age, education, and work experience who could sit for six hours, stand for two hours, and walk for two hours, could perform the work as "as it's performed." R. 28, 51.

The magistrate judge found that substantial evidence supported the ALJ's determination that Teresa was capable of performing her past relevant work as a credit manager as she actually performed it. He based his conclusion on the testimony from the vocational expert that Teresa could do the work "as it's performed." ECF No. 19 at 17.

Teresa objects to this finding, pointing out that the vocational expert's testimony that she could do the job "as it's performed" was in response to the ALJ's question of whether a hypothetical person with Teresa's residual functional capacity could return to her "past work as she actually performed it or as it is customarily performed in the national economy." R. 51.

14

Given the context of the question, Teresa argues that it is unclear whether the vocational expert was saying that she could do the work as she performed it, or as it is performed in the national economy. Teresa then goes on to argue that the work as she performed it required sitting between six-and-a-half and seven hours per day which is more sitting than allowed for by her RFC. R. 216-219.

The court agrees that it is unclear whether the vocational expert meant that Teresa could perform the work as it is performed in the national economy, or as she previously performed it and the court also agrees that Teresa stated that the job as she performed it required her to sit more than six hours per day. However, even if the vocational expert testified and the ALJ found that Teresa could perform her past relevant work as it is generally performed in the national economy, the issue regarding her ability to sit for an extended period of time remains. The ALJ's finding that Teresa can sit for six hours per day is not supported by substantial evidence, because the ALJ did not properly credit the testimony from two treating sources who found that she could not sit for an extended period. Therefore, the ALJ's determination that Teresa can perform sedentary work, including her previous job as a credit manager, is not supported by substantial evidence. Accordingly, Teresa's objection to the magistrate judge's conclusion that substantial evidence supports the ALJ's determination that she can return to her past relevant work is sustained.

## CONCLUSION

For the reasons stated, the court finds that the magistrate judge erred in finding that the ALJ's determination regarding the weight she gave to Dr. Nottingham's June 2015 opinion and her determination that Teresa can return to her past relevant work are

15

supported by substantial evidence. As such, the court **REJECTS** magistrate judge's report and recommendation and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

An appropriate Order will be entered.

Entered: 03-20-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge